## Robinson v. Commonwealth.

### Buskirk v. Same.

### Hatfield v. Same.

(Decided October 5, 1915.)

#### Appeals from Pike Circuit Court.

1.  Intoxicating Liquors—Tavern License—Construction of Statute.—
    Under Section 4206 of the Kentucky Statutes, providing that "license to keep a tavern, with the privilege of retailing liquor, shall not be granted unless the keeping of the tavern is necessary for the accommodation of the public," the granting of license to sell liquor by retail is a mere incident to the granting of a license to keep a house of entertainment for the public, and unless the convenience of the public requires that a house for their entertainment should be maintained at the place where it is sought to obtain a license to keep the tavern, no license should be granted.

2.  Intoxicating Liquors—Tavern License—With Privilege of Retailing Liquor—When Should Be Refused.—When it appears that the real purpose of the applicant is to secure the right to sell whiskey, and that the application for a license to keep a tavern for the accommodation of the public is a mere pretense or scheme to secure the right to sell liquor, the license should not be granted.

R. H. COOPER for appellant Robinson.

WHITT & SHANNON for appellants Buskirk and Hatfield.

E. J. PICKLESIMER, J. S. CLINE, AUXIER, HARMAN & FRANCIS, JAMES GARNETT, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming in each case.

The appellants, Robinson, Buskirk and Hatfield, made application to the county court of Pike County for license authorizing them to keep a tavern and sell at retail spirituous, vinous and malt liquors in Blackberry pre-

cinct. Each of them sought separately to obtain the tavern license with this privilege, and the county court granted to each the license applied for.

From the order granting the license the county attorney of Pike County prosecuted an appeal in each case to the circuit court, and that court entered a judgment directing the county court to set aside the order granting the license, and from this judgment each of the appellants prosecutes a separate appeal.

The facts in each case are substantially the same, and as the judgment of the circuit court in each case was correct, the three cases will be disposed of in one opinion.

Section 4203 of the Kentucky Statutes provides, in part: "The county court shall not grant a license to sell spirituous, vinous or malt liquors until ten days' notice shall be given by posting a written or printed notice at the door of the courthouse, and at least four public places in the neighborhood where the liquor is to be sold; and if the majority of the legal voters in the neighborhood shall protest against the application, it shall be refused. The county court in each instance shall determine what constitutes the neighborhood."

In section 4206 it is provided: "License to keep a tavern outside of an incorporated city or town shall be granted only to persons who are prepared with houses, bedding, stabling and provender sufficient to accommodate the public, and shall not be granted to any one unless the keeping of a tavern at the place proposed is necessary for the accommodation of the public.   *   *   *"

Under this statute it is essential to the granting of the tavern license, with the privilege of selling liquor, such as these appellants applied for, that the keeping of a tavern at the place proposed is necessary for the accommodation of the public. The purpose of the statute was to authorize the keeping of a house or tavern at which the traveling public might be entertained, and not the keeping of a place at which whiskey might be sold. The granting of license to sell liquor by retail is a mere incident to the granting of a license to keep a house of entertainment for the benefit of the public, and unless the convenience of the public requires that a house for their entertainment shall be maintained at the place where it is sought to obtain a license to keep the tavern, no license should be granted. Therefore, when it appears that the real and only purpose of the applicant is to secure the

right to sell whiskey and that the application for license to keep a house of entertainment or a tavern for the accommodation of the public is a mere pretense or scheme to secure the right to sell liquor, the license should not be granted.

This being our construction of the statute, we are clearly of the opinion that the county judge abused a sound discretion in granting these appellants license and that the judgment of the circuit court was correct.

The people of the State of West Virginia voted in favor of prohibiting the sale of intoxicating liquors in that State, and soon thereafter these appellants, upon discovering that the sale of whiskey by retail in Black-berry precinct in Pike County, Kentucky, just across the little Tug River from West Virginia, might be permitted if license could be obtained to operate a tavern with this privilege proceeded to make application for the license involved in these appeals. It seems that before the State of West Virginia went dry it had never occurred to these appellants, or any one else, that the accommodation of the traveling public required the setting up of taverns in Blackberry precinct at the places designated by appellants. But, with West Virginia only a few steps from Blackberry precinct, dry, with a large mining population in Blackberry precinct and a thickly settled country across the river in West Virginia, this Kentucky precinct seemed to afford a most inviting field for saloons; and so these appellants suddenly became very solicitous about the comfort and convenience of the people in Pike County and proposed to speedily supply the accommodations for the traveling public that, in their judgment, were needed in Blackberry precinct. With this object in view they each undertook to obtain the licenses that were granted by the county court.

Robinson applied for license to establish a tavern and saloon, or rather a saloon, in what is called the Hatfield building, a miner's house on the bank of Tug River, within a few hundred yards of the public school building and near by a mining camp, although there had never been a tavern at this place or nearer to it than the town of Thacker, at which place, about one-quarter of a mile distant, there were hotels and boarding houses.

Hatfield concluded that it was necessary for the accommodation of the traveling public to set up a saloon with a tavern as an annex at the mouth of a tunnel on the

Norfolk and Western Railroad, although there was no railroad station, post office, village or even public road at the place.

And Buskirk took up the notion that a tavern with the privilege of selling whiskey was needed to accommodate the public in the so-called town of Buskirk, a little hamlet of probably twenty-five people, including children, situated immediately across Tug River from the city of Matewan, W. Va., where there are two fine hotels.

The idea that a tavern for the accommodation of the public was needed at any of these places, is so preposterous that we do not deem it necessary to do more than to make the brief statement of fact heretofore set out. It might, however, be said, although under the circumstances no protests were necessary, that a majority of the people living in the neighborhood where it was proposed to set up these saloons protested against their establishment, pointing out to the county court in earnest and appealing words that saloons in this unpoliced territory would be a menace to the peace and quiet of the community and of no benefit or accommodation whatever to any person except the proprietors.

The judgment of the circuit court in each case is affirmed.